UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

CHARLES WILSON,                                :

       Plaintiff,                                  :

                                       07 CV 5449 (DC)

       v.                                          :

CAPITOL RECORDS, INC. and EMI MUSIC, INC.      :   Electronically Filed
d/b/a CAPITOL MUSIC GROUP, BERLIN
CAMERON UNITED, HEINEKEN USA, INC.,            :

       Defendants.                                :

------------------------------------------------------------------x


**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO
DISMISS PLAINTIFF'S STATE LAW RIGHT OF PUBLICITY CLAIM
FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

## **Memorandum of Points and Authorities**

### I.    **Preliminary Statement**

Plaintiff Charles "Charlie" Wilson's ("Plaintiffs'") amended complaint avers three claims for relief relating to the (alleged) unlicensed use of his vocal performance in the sound recordings *Beautiful* and *You Got What I Want*. Plaintiff names Capitol Records, Inc.("Capitol"), EMI Music, Inc. ("EMI") a division of EMI Group, Berlin Cameron United, and Heineken USA, Inc., as defendants (collectively, "Defendants"). Only Plaintiff's purported vocal performance in *Beautiful*, as part of a Heineken advertisement, is at issue in this Motion. For purposes of this motion only, Defendants do not challenge Plaintiff's first claim for relief (accounting) or second claim for relief (copyright infringement). However, Plaintiff's third claim for relief for violation of his right of publicity under state law, N.Y. Civ. Rights Law §§ 50, 51, is preempted by the Copyright Act and should be dismissed. 17 U.S.C. § 301.

Dismissal of Plaintiff's third claim for relief will considerably reduce the scope of discovery and trial in this action. Specifically, expert witness discovery and testimony, as well as factual investigation into the value of Plaintiff's right of publicity will be avoided.[1]

### II.    **Factual Background**

Defendant Capitol is one of the foremost record labels in the United States.[2] Defendant Berlin Cameron United is a leading advertising agency based in New York. Defendant Heineken is one of the leading beer importers in the United States. Plaintiff – the former lead singer of the group, "The Gap Band" – is a professional singer and recording artist.

---

[1]    On September 28, 2007, after reviewing pre-motion letters, the Court gave Defendants permission to file this Motion to Dismiss.

[2]    EMI Music, Inc. erroneously sued herein as EMI Music, Inc. d/b/a Capitol Music Group is an affiliate of Capitol, but was not directly involved in releasing or otherwise exploiting the recordings at issue, and thus is not a proper party to this case.

2

In November 2002, Priority Records, a label of Defendant Capitol, released an album entitled "Paid Tha Cost To Be Da Bo$$," (the "Album") by recording artist Calvin Broadus, Jr. p/k/a Snoop Dogg. The Album contained two sound recordings at issue in this case: *Beautiful* and *You Got What I Want* (the "Recordings"). Plaintiff avers he collaborated on and contributed vocal performances to both Recordings. Complaint ¶¶ 12-13. Following the release of the Album, Defendant Capitol granted to Defendants Berlin Cameron United and Heineken a license to use portions of the sound recording *Beautiful* in an advertising campaign for Heineken Premium Light Beer (the "Advertisement").

Plaintiff filed his amended complaint on June 20, 2007, averring three claims for relief.

***First***, Plaintiff avers he co-owns the copyrights to the Recordings and, thus, is entitled to an accounting. Complaint ¶¶ 18-22. ***Second***, Plaintiff avers that Berlin Cameron United and Heineken infringed Plaintiff's copyright in *Beautiful* by using the sound recording in the Advertisement. He also avers, in the alternative, that Capitol and EMI infringed his copyright in *Beautiful* "[i]f [they] deny that Plaintiff is a co-owner of the recording." Complaint ¶¶ 23-28. ***Third***, Plaintiff avers Berlin Cameron United and Heineken violated his right of publicity by the "use . . . of plaintiff's vocal performance" in the Advertisement. Complaint ¶¶ 29-33.

Even taking all of Plaintiff's averments as true, Plaintiff's third claim for relief – for violation of his state-law right of publicity – fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The Copyright Act ***preempts*** Plaintiff's right of publicity claim, as that claim is equivalent to the rights protected by the Copyright Act and involves the subject matter of copyright. 17 U.S.C. § 301. Specifically, Plaintiff's right of publicity claim is based on a vocal performance (a work of authorship) that has been fixed in a tangible medium (a sound recording) that falls squarely within the subject matter of copyright law (sound recordings are an express category of copyright). And, Plaintiff's right of publicity claim is "equivalent" to

3

rights protected under the Copyright Act, because Plaintiff's suit is based on an alleged reproduction and public performance of his vocal performance.

Defendants respectfully request that the Court dismiss Plaintiff's right of publicity claim as preempted by the Copyright Act.

**III.   Argument**

   **A.   Legal Standard**

In considering a motion to dismiss, the Court must accept as true Plaintiff's factual allegations and draw all inferences in Plaintiff's favor. Fed. R. Civ. P. 12(b)(6); Allaire Corp. v. Okumus, 433 F.3d 248, 249–50 (2d Cir. 2006) (internal citations omitted). However, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to [defeat] a motion to dismiss." Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 337 (2d Cir. 2006), citing Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir. 2002).

   **B.   Plaintiff's Right Of Publicity Claim Is Preempted By The Copyright Act**

A state law claim is preempted by the Copyright Act if two elements are satisfied. *First*, the state law claim must encompass "a work[ ] of authorship that [is] fixed in a tangible medium of expression and come[s] within the subject matter of copyright." 17 U.S.C. § 301(a); see Mayer v. Josiah Wedgwood & Sons, 601 F. Supp. 1523, 1535 (S.D.N.Y. 1985). *Second*, the state law claim must seek to protect a right that is "equivalent" to any right that comes within the "general scope" of the Copyright Act. Id. While the Copyright Act does not preempt all right of publicity claims, courts routinely find right of publicity claims preempted where, as here, the Plaintiff seeks to protect only his voluntary performance *as fixed in a sound recording*. E.g., Nat'l Basketball Ass'n v. Motorola, Inc., 105 F.3d 841, 848-49 (2d Cir. 1997) (finding preemption once a performance is fixed in a tangible form); accord Laws v. Sony Music Entm't,

4

Inc., 448 F.3d 1134, 1139-43 (9th Cir. 2006) (holding that "once a voice becomes part of a sound recording in a fixed tangible medium it comes within the subject matter of copyright law"); Butler v. Target Corp., 323 F. Supp. 2d 1052, 1056–57 (C.D. Cal. 2004) (holding a right of publicity claim, based on the use of the plaintiff's sound recordings in the defendant's commercials, was preempted by the copyright act); Fleet v. CBS, Inc., 50 Cal. App. 4th 1911, 1918-19 (1996) (holding that two actors' rights of publicity in their performances in a motion picture were preempted because "once [plaintiffs'] performances were put on film . . . the performances came within the scope or subject matter of copyright law protection").

Here, both elements are satisfied. Plaintiff's right of publicity claim is preempted.

> **1.    The right Plaintiff seeks to protect under New York's right of publicity statute is a work of authorship, fixed in a tangible medium of expression, that falls within the subject matter of the Copyright Act.**

In his third claim for relief, Plaintiff seeks to protect his vocal performance in the sound recording *Beautiful*. That is, he seeks to protect a work of authorship (Plaintiff's vocal performance) that is fixed within a tangible medium of expression (the sound recording *Beautiful*), which falls within the subject matter of copyright (the Copyright Act, 17 U.S.C. § 102(a)(7), explicitly includes "sound recordings"). Because Plaintiff's right of publicity claim concerns his vocal performance ***as embodied in a sound recording***, the first element of the preemption analysis clearly is satisfied.

The Ninth Circuit's decision in Laws is instructive. In 1979, Laws, a professional recording artist, produced a sound recording for Elektra Records ("Elektra"). Laws, 438 F.3d at 1136. Two decades later, Elektra granted a non-exclusive license to Sony Music to use a sample of Laws' sound recording in a song performed by Jennifer Lopez and L.L. Cool J. Id. Having conveyed her copyright interest in the sound recording to Elektra at the time the recording was

made, Laws was unable to bring suit under the Copyright Act. As a result, Laws elected to sue Sony alleging that Sony's use of her vocal performance violated her right of publicity under California law. Id. The court concluded that the Copyright Act preempted Laws' right of publicity claim: "Although California law recognizes an assertable interest in the publicity associated with one's voice, . . . it is clear that federal copyright law preempts a claim alleging misappropriation of one's voice when the *entirety of the misappropriated vocal performance is contained within a copyrighted medium*." Id. at 1141 (emphasis added); see also Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n, 805 F.2d 663, 675 (7th Cir. 1986) (baseball players' right of publicity claims in broadcasts of games were preempted by the Copyright Act because "[t]he Players' performances are embodied in a copy, *viz*, the videotape of the telecast"); Fleet, 50 Cal. App. 4th at 1918-19 (two actors' rights of publicity in their performances in a motion picture were preempted because "once [plaintiffs'] performances were put on film . . . the performances came within the scope or subject matter of copyright law protection").

It is of no moment that Plaintiff (artfully) drafts his complaint such that the phrase "sound recording" does not appear in his right of publicity claim. As in Laws, Plaintiff's right of publicity claim "could hardly be more closely related to the subject matter of the Copyright Act." Laws, 448 F.3d at 1142. Indeed, both Plaintiff's second claim of action (federal copyright infringement) and third claim (state law right of publicity) are premised on the exact same usage, which *is the use of Plaintiff's vocal performance in a sound recording* in the Advertisement. See Complaint ¶¶ 26, 32. Plaintiff's right of publicity claim clearly falls within the subject matter of the Copyright Act, satisfying the first prong of the preemption analysis.

23678/000/807883.1

2.   **The right Plaintiff asserts under New York law is equivalent to the rights protected under the Copyright Act.**

Plaintiff's claim under N.Y. Civ. Rights Law §§ 50, 51 is based on the same core of facts that lie at the heart of his copyright claim. Compare Complaint ¶ 26 (copyright infringement cause of action: "Defendants Berlin Cameron United and Heineken USA, Inc. have used the sound recording of plaintiff's vocal performance of 'Beautiful' without plaintiff's consent in a commercial for Heineken Premium Light beer [sic]."), with Complaint ¶ 32 (right of publicity cause of action: "The use by Berlin Cameron United and Heineken USA, Inc. of plaintiff's vocal performance in commercial advertisements for Heineken Premium Light Beer . . . violates New York['s right of publicity statute.]"). In addition to the obvious factual equivalence between Plaintiff's federal and state law claims, the legal gravamen of Plaintiff's right of publicity claim mirrors a federal copyright claim. Specifically, the essence of Plaintiff's state law claim is the (allegedly) unauthorized *reproduction and public performance* in the Advertisement of Plaintiff's vocal performance as embodied in the sound recording "Beautiful." These rights – i.e., of reproduction and public performance – are two of the six "exclusive" rights specifically enumerated in the Copyright Act. See 17 U.S.C. § 106(1), (4). Because the facts asserted and the rights protected under New York law are equivalent to the facts asserted and rights protected under the Copyright Act, the second prong of the preemption analysis is satisfied.

That there are minor differences between the elements of a state law right of publicity claim and a federal copyright infringement claim is an irrelevant distinction for purposes of a preemption analysis. Only where the state law claim has an *extra* element that "changes the nature of the action so that it is *qualitatively* different from a copyright infringement claim" does the state law survive preemption. Mayer, 601 F. Supp. at 1535 (emphasis in original) (internal citations omitted). For example, there is no *qualitative* difference even though New York's right of publicity statute requires that the potential plaintiff's name, voice, or likeness be used "for advertising purposes or for the purposes of trade" and "without the [plaintiff's] written consent,"

7

N.Y. Civ. Rights Law §§ 50, 51, neither of which is required under the Copyright Act. Courts routinely hold that where the subject matter being protected is the plaintiff's vocal performance as embodied in a copyrighted sound recording, rather than the plaintiff's voice alone, these additional elements merely alter the *scope* of protection, but ***not its nature***. E.g., Motown Record Corp. v. George A. Hormel & Co., 657 F. Supp. 1236, 1240 (C.D. Cal. 1987) ("The fact that [the right of publicity statute] requires that the unauthorized use must be in connection with the advertising of a product, unlike copyright, is not a *qualitative* extra element which changes the nature of the action.") (emphasis added). Likewise, the added requirements of commerciality and written consent "[do] not establish qualitatively different conduct on the part of the infringing party, nor a fundamental nonequivalence between the state and federal rights implicated." Harper & Row Publishers, Inc. v. Nation Enters., 723 F.2d 195, 201 (2d Cir. 1983) (plaintiff's claim for tortious interference with contractual relations was preempted, in spite of the additional elements of knowledge and intent), rev'd on other grounds, 471 U.S. 539 (1985); accord Laws, 438 F.3d at 1144 (internal citations omitted) ("The mere presence of an additional element ('commercial use') in section 3344 is not enough to qualitatively distinguish [plaintiff's] right of publicity claim from a claim in copyright. . . . Although the elements of [plaintiff's] state law claims may not be identical to the elements in a copyright action, the underlying nature of [plaintiff's] state law claims is part and parcel of a copyright claim.").[3]

---

[3] The case cited by Plaintiff in his July 27, 2007 letter to the Court, Oleveira v. Frito Lay, Inc., 251 F.3d 56 (2d Cir. 2001), is inapposite. Oleveira was not a preemption case and did not engage any analysis of preemption law. Plaintiff's quote from that case ("[t]he making of a recording does not constitute consent to the public release of the recording" id. at 64) has absolutely no bearing on the preemption question at issue here. Instead, that quote concerned the panel's analysis of the defendant's invocation of a specific affirmative defense contained in New York's right of publicity statute. Id. at 64.

## IV. Conclusion

For the foregoing reasons, Defendants respectfully request that the Court dismiss Plaintiff's third claim – for violation of his state-law right of publicity – for failure to state a claim upon which relief can be granted.

Dated: New York, New York  
October 19, 2007

Respectfully submitted,

COWAN, LIEBOWITZ & LATMAN, P.C.  
RICHARD MANDEL

MITCHELL SILBERBERG & KNUPP LLP  
RUSSELL J. FRACKMAN  
DAVID A. STEINBERG  
WADE B. GENTZ  
Attorneys for Defendants

By: _____  
David A. Steinberg  
11377 West Olympic Boulevard  
Los Angeles, California 90064  
(310) 312-2000

23678/000/807883.1