Helene M. Freeman (NY 1088004)
DORSEY & WHITNEY LLP
250 Park Avenue
New York, New York 10177
Telephone: (212) 415-9200
Facsimile: (212) 953-7201

Attorneys for Plaintiff Charles Wilson

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

CHARLES WILSON,

                Plaintiff,

    v.

CAPITOL RECORDS, INC. and EMI MUSIC,
INC. d/b/a CAPITOL MUSIC GROUP,
BERLIN CAMERON UNITED, HEINEKEN
USA, INC.

                Defendants.

07 CV 5449 (DC)

------------------------------------------------------------X

**PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO MOTION TO DISMISS**

**DORSEY & WHITNEY L.L.P.**
**250 Park Avenue**
**New York, NY 10177**
**(212) 415-9200**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... iii

FACTS........................................................................................................................................ 2

ARGUMENT .............................................................................................................................. 2

    I.      Legal Standard for a Motion to Dismiss ................................................................. 2

    II.     Preemption Under the Copyright Act ..................................................................... 3

    III.    The Right of Privacy and Publicity Protected by Section 51 of the Civil
           Rights Law is Not Preempted ................................................................................. 5

CONCLUSION ........................................................................................................................ 12

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Baltimore Orioles v. Major League Players Assoc'n,
   805 F.2d 663 (7th Cir. 1986) .................................................................................. 9, 10

Briarpatch Limited, L.P. v. Phoenix Pictures, Inc.,
   373 F.3d 296 (2d Cir. 2004) ........................................................................................ 3

Brown v. Ames,
   201 F.3d 654 (5th Cir. 2000) ..................................................................................... 12

Chambers v. Time Warner, Inc.,
   282 F.3d 147 (2d Cir. 2002) ..................................................................................... 3, 8

Chambers v. Time Warner,
   No. 00 Civ. 2839 (JSR), 2003 WL 749422 (S.D.N.Y. 2003) ....................................... 8

Computer Assocs. Int'l, Inc. V. Altai, Inc.,
   982 F.2d 693 (2d Cir. 1992) ................................................................................ 3, 4, 7

Facenda v. N.F.L. Films, Inc.,
   488 F. Supp. 2d 491 (E.D.N.Y. 2007) ........................................................................ 11

Factors, Etc, Inc. v. Pro-Arts, Inc.,
   496 F. Supp. 1090 (S.D.N.Y. 1980), rev'd on other grounds, 652 F.2d 278 (2d
   Cir. 1981) cert. denied, 456 U.S. 927 (1982) ............................................................ 7, 8

Fleet v. CBS, Inc.,
   50 Cal. App. 4th 1911 (1996) ............................................................................. 9, 11, 12

Gautier v. Pro-Football,
   106 N.Y.S. 2d 553 (1st Dept. 1951), aff'd 304 N.Y. 354 (1952) ................................. 5

Harper & Row, Publishers, Inc. v. Nation Enters.,
   723 F.2d 195 (2d Cir. 1983), rev'd on other grounds, 471 U.S. 539 (1985) ................ 3

Ippolito v. Ono-Lennon,
   526 N.Y.S. 2d 877 (1st Dept. 1988) ............................................................................ 8

Iqbal v. Hasty,
   490 F.3d 143 (2d Cir. 2007) ......................................................................................... 3

James v. Delilah Films, Inc.,
  544 N.Y.S. 2d 447 (Sup. Ct. N.Y. Co. 1989) .................................................................. 8

KNB Enterprises v. Matthews,
  78 Cal. App. 4th 362 (2000) ......................................................................................... 10

Laws v. Sony Music Entertainment, Inc.,
  448 F.2d 1134 (9th Cir. 2006) ........................................................................ 9, 10, 11, 12

Midler v. Ford Motor Co.,
  849 F.2d 460 (9th Cir. 1988) .......................................................................................... 8

Molina v. Phoenix Sound, Inc.,
  747 N.Y.S. 2d 227 (1st Dept. 2002) ............................................................................... 8

Robinson v. Snapple Beverage Corp.,
  NO. 99 Civ. 344 (LMM), 2000 WL 781079 (S.D.N.Y. 2000) ...................................... 8

Shamsky v. Garan,
  632 N.Y.S. 2d 930 (S. Ct. N. Y. Co. 1995) ................................................................... 7

Toney v. L'Oreal USA, Inc.,
  406 F.3d 905 (7th Cir 2005) ....................................................................................... 6, 9


**STATUTES**

Copyright Act of 1976 .......................................................................................................... 7

New York Civil Rights Law § 51 ................................................................................ passim

U.S. Copyright Act § 103 ..................................................................................................... 3

U.S. Copyright Act § 102 ..................................................................................................... 3

U.S. Copyright Act § 106 .................................................................................................. 3, 7

U.S. Copyright Act § 301 .................................................................................................. 1, 9

U.S. Copyright Act § 301(b) ................................................................................................. 3

**OTHER AUTHORITIES**

1 Melville B. and David Nimmer on Copyright § 1.01[B] at 1-14-15 (1991) (now § 1.01 [B][1] at 1-13-14 (2007 ................................................................................ 4

1 Melville B. and David Nimmer § 1.01[B][1] at 1-29-30 ................................................. 5

94th Cong., 2d Sess. (1976), 1976 U.S.C.C.A.N. 5659 ..................................................... 7

Fed. R. Civ. P. Rule 8(a) .................................................................................................... 9

Fed. R. Civ. P. Rule 12(b)(6) ......................................................................................... 2, 3

Restatement of the Law Third, Unfair Competition § 46, comment i (1995).................... 6

Plaintiff Charles Wilson submits this memorandum of law in opposition to "defendants'" motion to dismiss the third claim asserted in the Amended Complaint. The third claim seeks recovery against Berlin Cameron United and Heineken USA, Inc. ("Heineken") for violation of New York Civil Rights Law § 51 on account of the unauthorized use of plaintiff's voice in a commercial for Heineken Premium Light Beer.

Defendants move to dismiss the third claim, on the ground that it is preempted by § 301 of the Copyright Act.[1] The sole basis for the motion is that Heineken used a recording of Mr. Wilson's voice in its commercial. Defendants argue, relying on cases outside of this Circuit, that because recordings are within the subject matter of copyright, no claim may be asserted under § 51 of the New York Civil Rights Law, without regard to whether Mr. Wilson ever conveyed any rights in the recording of his voice to anyone or authorized its use for any purpose.

Defendants' motion should be denied. As more fully set forth below, defendants Heineken and its advertising agency have mischaracterized the harm for which relief is sought in the third claim. Wilson objects to the appropriation of an aspect of his persona or identity in the third claim. He seeks recovery for his personal injury and not for the value of his property interest in any particular recording of his voice. Further, defendants ignore the well-settled two-part test applicable to preemption analysis. Under that test,

---

[1] Although the motion is made by the "defendants," the third claim is not asserted against the Capitol defendants and is limited to Heineken and its advertising agency.

preemption does not apply where, as here, the state law claim contains the extra element of use in commercial advertising.

Finally, the copyright law and the policies underlying the copyright law are not in anyway implicated in the third claim. None of the defendants owns the copyright in the recording of Mr. Wilson's voice and no defendant has the right under the Copyright Law to use it in any manner.

## FACTS

Charles Wilson is a celebrated singer, with a career spanning over 30 years. Both as the lead singer of the Gap Band and as a solo performer, he has released numerous albums, many of which have sold in excess of one million copies, and spawned more than a dozen top ten hits. (Amended Complaint ¶¶ 9-11) Heineken and its ad agency broadcast on television and disseminated over the internet a commercial for Heineken Premium Light Beer which contains Mr. Wilson's voice. (Amended Complaint ¶¶ 30-33) How Heineken came to use Mr. Wilson's voice and what it used to create the commercial is presently unknown as no discovery has occurred and none of the defendants have answered the complaint. What is clear is that Mr. Wilson did not authorize the use of his voice in the Heineken commercial and has never authorized any of the defendants to exploit a recording of his voice. (Amended Complaint ¶ 31)

## ARGUMENT

I. **Legal Standard for a Motion to Dismiss**

On a motion to dismiss under Fed. R. Civ. P. Rule 12(b)(6), the court must accept as true the factual allegations in the complaint, and draw all reasonable inferences in

favor of plaintiff. E.g., Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). So long as the claim is plausible on its face and provides fair notice of the facts on which it is based, a complaint should not be dismissed under Rule 12(b)(6). See, Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007).

## II. <u>Preemption Under the Copyright Act</u>

Preemption under the Copyright Act is expressly limited. Section 301(b) of the Copyright Act provides in pertinent part:

> "Nothing in this title annuls or limits any rights or remedies under the common law or statutes of any state with respect to:
>
> (1) subject matter that does not come within the subject matter of copyright as specified by sections 102 and 103, including works of authorship not fixed in any tangible medium of expression, or
>
> . . .
>
> (3) activities violating legal or equitable rights that are not within the general scope of copyright as specified by section 106...

The Second Circuit has adopted a two-part test for determining whether a state law claim is preempted. First, the Court determines whether the "subject matter" of the claim is within the subject matter to which the copyright law applies under Sections 102 and 103 ("the subject matter requirement"). Second, assuming that the subject of the claim is within the protection of the Copyright Law, the Court looks to whether the rights asserted under state law are "equivalent" to the exclusive rights of a copyright holder under Section 106 of the Copyright Act (the "scope requirement"). E.g., Briarpatch Limited, L.P. v. Phoenix Pictures, Inc., 373 F.3d 296, 305 (2d Cir. 2004); Computer Assocs. Int'l, Inc. V. Altai, Inc., 982 F.2d 693, 716 (2d Cir. 1992); Harper & Row, Publishers, Inc. v.

3

Nation Enters., 723 F.2d 195, 201 (2d Cir. 1983), rev'd on other grounds, 471 U.S. 539 (1985).  Preemption may be found only when the state created right may be abridged "by an act which, **in and of itself,** would infringe one of the exclusive rights provided by copyright law".  Computer Assocs., 982 F.2d at 716.  (Emphasis supplied.)

Under the Second Circuit test, "if an 'extra element' is required instead of or in addition to the acts of reproduction, performance, distribution or display, in order to constitute a state created cause of action, then the right does not lie 'within the general scope of copyright' and there is no preemption."  Id., quoting 1 Melville B. and David Nimmer, Nimmer on Copyright § 1.01[B] at 1-14-15 (1991) (now § 1.01 [B][1] at 1-13-14 (2007) (hereafter "Nimmer").  The Second Circuit looks at "what plaintiff seeks to protect, the theories in which the matter is to be protected and the rights sought to be enforced."  Computer Assocs., 982 F.2d at 716.

When judged by this standard, it is plain that plaintiff's claim under Section 51 of the Civil Rights Law is not preempted.  The state statutory right protects plaintiff's privacy from the use of an attribute of his identity for commercial purposes without his consent.  The claim interposed has nothing to do with the sound recording and rights in it.  Plaintiff's persona and privacy is not within the subject matter of copyright.  Further, defendants' use of Mr. Wilson's voice for a beer advertisement is an "extra element," which has been found routinely to take the statutory cause of action outside of preemption.

4

### III. The Right of Privacy and Publicity Protected by Section 51 of the Civil Rights Law is Not Preempted

Section 51 of the New York Civil Rights Law authorizes recovery for injuries sustained by virtue of the use of any person's voice for advertising purposes without first obtaining written consent to such use.

The purpose underlying Section 51 of the Civil Rights Law has been well established for over 100 years.

> "The statutory creation in this state of a limited right of privacy was intended for the protection of the personality of an individual against unlawful invasion.... It provided primarily a recovery for injury to the person, not his property or business. The recovery is grounded on the mental strain and distress, on the humiliation, on the disturbance of the peace of mind suffered by the individual affected... [W]here a cause of action under the Civil Rights statute has been established, damages may include recovery for a so-called property interest inherent and inextricably interwoven in the individual's personality...., but it is the injury to the person not to the property which establishes the cause of action. That is the focal point of the statute."

Gautier v. Pro-Football, 106 N.Y.S. 2d 553, 560 (1st Dept. 1951), aff'd 304 N.Y. 354, 358 (1952) ("the statute was born of the need to protect the individual from selfish, commercial exploitation of his personality").

Courts and commentators have routinely concluded that the attributes of personal identity protected by state laws such as Civil Rights Law § 51 and the doctrines of rights of privacy and publicity are not within the subject matter of copyright. See, e.g., 1 Nimmer § 1.01[B][1] at 1-29-30:

> Preemption is foreclosed by the failure of the 'work' to fall within the subject matter of copyright. The 'work' that is the subject of the right of publicity is the persona, i.e., the name and likeness of a celebrity or other individual. A persona can hardly be said to constitute a 'writing' of an

5

'author' within the meaning of the Copyright Clause of the Constitution. <u>A fortiori</u>, it is not a 'work of authorship' under the Act. Such name and likeness do not become a work of authorship simply because they are embodied in a copyrightable work such as a photograph.

Likewise, McCarthy states:

In the author's opinion, it seems relatively clear that most assertions of invasion of the state law of privacy are not preempted by federal law. The subject matter of such rights is human dignity and peace of mind. This is hardly within the subject matter of copyright.

J2 J. T. McCarthy, The Rights of Publicity and Privacy, Second Edition, ¶ 49 at 761-62.

. . . .

Under the majority rule, there is no federal copyright preemption of the state law right of publicity because the right of publicity protects human identity, which is not subject matter covered by copyright law.

<u>Id.</u>, §§ 11-5 @ 763.

Similarly, the <u>Restatement of the Law Third, Unfair Competition</u> § 46, comment i (1995) states:

Personal identities and the indicia by which they are recognized, however, are not generally within the subject matter of copyright. No copyright can be obtained for example on a person's name, voice or physical likeness. Fixation of a particular indicia of identity within a work of authorship does not bring the indicia within the subject matter of copyright. Copyright in a photograph or portrait of an individual, for example extends only to the particular depiction, not the underlying likeness of the person depicted. Similarly, copyright in a film or videotape of a person's performance does not extend to the personal likeness or other identifying characteristics of the performer, and <u>copyright in a sound recording does not create exclusive rights in the identifying characteristics of the performer's voice</u>. (Emphasis supplied).

See also, <u>Toney v. L'Oreal USA, Inc.</u>, 406 F.3d 905, 910 (7th Cir 2005). (A person's likeness – her persona – is not authored and it is not fixed. From this we must also find that the rights protected by the IRPA are not 'equivalent to any of the exclusive rights

6

within the general scope of copyright that are set forth in § 106. Copyright laws do not reach identity claims such as Toney's.); Shamsky v. Garan, 632 N.Y.S. 2d 930 (S. Ct. N. Y. Co. 1995); Factors, Etc, Inc. v. Pro-Arts, Inc., 496 F. Supp. 1090, 197 (S.D.N.Y. 1980), rev'd on other grounds, 652 F.2d 278 (2d Cir. 1981) cert. denied, 456 U.S. 927 (1982).

Finally, the legislative history of the Copyright Act of 1976 indicates that Congress did not intend for the statute to preempt state law claims for invasion of privacy or publicity. H.R. Representative. 1476, 94th Cong., 2d Sess. at 132 (1976), 1976 U.S.C.C.A.N. 5659, 5748, ("the evolving common law rights of 'privacy,' 'publicity' and trade secrets… would remain unaffected as long as the causes of action contain elements such as invasion of personal rights or breach of trust or confidentiality that are different in kind from copyright infringement."), cited with approval in Computer Assoc., 982 F.2d at 717.

Ignoring these authorities, Heineken contends that simply because the means by which Heineken appropriated Mr. Wilson's voice—by use of a recording in which it is contained—Mr. Wilson's claim for violation of Civil Rights Law § 51 is preempted. However, in doing so it mischaracterizes the nature of Mr. Wilson's claim. Mr. Wilson's third claim is not for "misappropriation of his vocal performance" as embodied in a sound recording. Rather, it is for the misappropriation of his identity by the unconsented use of one of its attributes—his voice.

There can be little doubt that a voice by which an individual can be identified is no different from his name or likeness. Indeed, in the case of a performer with a 30-year

7

career of significant accomplishment, it is a significant part of his persona. A voice as part of an individuals' identity is not copyrightable. See, e.g., Midler v. Ford Motor Co., 849 F.2d 460, 463 (9th Cir. 1988). ("A voice is as distinctive and personal as a face. The human voice is one of the most palpable ways identity is manifested. We are all aware that a friend is at once known by a few words on the phone…. These observations hold true of singing.")

Even if it were assumed arguendo that the subject matter of Mr. Wilson's Civil Rights Law § 51 claim was within the subject matter of copyright, the claim would still not be preempted because it contains an "extra element" – use in commercial advertising. The use of a performer's identity in commercial advertising has been found to constitute an extra-element which takes the Civil Rights Law claim outside of preemption. E.g., Molina v. Phoenix Sound, Inc., 747 N.Y.S. 2d 227 (1st Dept. 2002); Ippolito v. Ono-Lennon, 526 N.Y.S. 2d 877, 882 (1st Dept. 1988) (Judge Harold Baer); James v. Delilah Films, Inc., 544 N.Y.S. 2d 447, 450 (Sup. Ct. N.Y. Co. 1989); See also, Factors, Inc. Pro Arts, Inc., 496 F. Supp. 1090, 1097 (S.D.N.Y. 1980); rev'd on other grounds 652 F.2d 278 (2d Cir. 1981).

The ability of a performer such as plaintiff to maintain claims under Civil Rights Law § 51 is routinely upheld in this district regardless of the medium in which their voice or likeness is embodied. See, e.g., Robinson v. Snapple Beverage Corp., NO. 99 Civ. 344 (LMM), 2000 WL 781079 (S.D.N.Y. 2000); Chambers v. Time Warner, No. 00 Civ. 2839 (JSR), 2003 WL 749422 (S.D.N.Y. 2003), opinion on remand from Second Circuit, 282 F.3d 147 (2d Cir. 2002).

In short, what plaintiff seeks to protect and the right which he seeks to enforce is his right not to have his identity used to promote the sale of beer. Certainly, plaintiff should be able to adduce evidence that as a recovering substance abuser, he has sustained personal injury by the appropriation of his identity to promote drinking. He should also be able to present evidence that he has a valuable right in the use of his voice to promote products which he does personally endorse and which has been abridged by defendants' unauthorized acts. These aspects of the protection of his right to privacy afforded by the New York statute are in no way equivalent to the rights protected by copyright.[2]

Not only do the defendants' mischaracterize Mr. Wilson's claim, but also the cases cited by defendants do not support preemption here. Laws v. Sony Music Entertainment, Inc., 448 F.3d 1134, 1139-43 (9th Cir. 2006); Baltimore Orioles v. Major League Players Assoc'n, 805 F.2d 663, 675 (7th Cir. 1986) and Fleet v. CBS, Inc., 50 Cal. App. 4th 1911, 1918-19 (1996) do not stand for the broad proposition for which plaintiff cites them and, indeed, the courts which decided them have expressly rejected them for the broad proposition advanced. For example, the Seventh Circuit in Toney expressly rejected a reading of its Baltimore Orioles decision for the proposition that rights of publicity are preempted when embodied in a copyrightable work. In Toney, the court stated:

> Our decision in Baltimore Orioles v. Major League Player's Assoc'n, 805 F.2d 663 (7th Circ. 1986) has been widely criticized by our sister circuits and by several commentators. Many interpret the case as holding that the right as protected by state law is preempted by § 301 in all instances. We

---

[2] To the extent that the basis for Mr. Wilson's claim and the harm upon which it is based is not clearly articulated in the amended complaint under Rule 8(a) Fed. R. Civ. P. the remedy is amendment.

9

take this opportunity to clarify our holding: The case simply does not stand for the propositions that the right of publicity as protected by state law is preempted in all instances by federal copyright law; it does not sweep that broadly.

Baltimore Orioles holds that state laws that intrude on the domain of copyright are preempted even if the particular expression is neither copyrighted or copyrightable.... Baltimore Orioles itself makes clear that [a] player's right of publicity in his name or likeness would not be preempted if a company without the consent of the player, used the player's name to advertise its product."

805 F.2d at 666 n. 24.

Similarly, in KNB Enterprises v. Matthews, 78 Cal. App. 4th 362, 374 (2000), the Court stated:

[W]e would limit Fleet's broad language regarding preemption of the actor's section 3344 claims to the unique facts of that case. In our view, a section 3344 claim is preempted under Fleet where an actor or model with no copyright interest in the work seeks to prevent the exclusive copyright holder from displaying the copyrighted work. We do not believe a section 3344 claim is preempted under Fleet, where, as here, the defendant has no legal right to publish the copyrighted work.

Notwithstanding some of the broad language in Laws, the Ninth Circuit's decision in the case is properly understood to do no more than hold that a performer, with no copyright interest in a recording, who has expressly given up all such interest together with the right to license the recording, cannot prevent the copyright holder from exercising its rights under copyright. Since Laws did not involve commercial advertising, Laws had given up all rights to the recording and her claim was merely that a covenant of her recording contract had been violated, the rights of privacy and publicity were not involved on the facts presented.

10

This is how the Court in <u>Facenda v. N.F.L. Films, Inc.</u>, 488 F. Supp. 2d 491, 501-03 (E.D.N.Y. 2007) read <u>Laws</u>. There, the Court held that a right of privacy action was not preempted for the use of a football announcer's voice in a video promoting the sale of a computer game  The Court determined that, when properly read, the decision in <u>Laws</u> turns only on the fact that the performer parted with all of her rights by contract and it was the scope of the copyright rights held by the defendant and not the nature of the aspect of identity appropriated which determined the result. <u>Id.</u> 488 F. Supp. 2d at 502 n.3.

The decisions in <u>Laws</u>, <u>Butler</u> and <u>Fleet</u>, upon which defendants rely merely stand for the principal that a performer with no copyright interest in a work cannot prevent the exploitation of the work simply because the contract under which the work was created was violated. In <u>Butler</u>, the plaintiffs had performed under a union contract and the recording was made as a work-for-hire. The plaintiff's claim was for breach of the union contract. In <u>Fleet</u>, the performers complained only that they had not been paid the compensation due.

The principal set forth in these decisions is fully encompassed by the defenses under New York Civil Rights Law § 51, which provide:

> [N]othing in this article shall be so construed as to prevent any person, firm or corporation … from using the name, portrait, picture or voice of any author, composer or artist in connection with his literary, musical or artistic productions <u>which he has sold or disposed</u> of with such name, portrait, picture or voice used in connection therewith.
>
> Nothing contained in this section shall be construed to prohibit the copyright owner of a sound recording from disposing of, dealing in, licensing or selling that sound recording to any party, if the right to dispose

11

of, deal in, license or sell such sound recording has been conferred by contract or other written document by such living person or the holder of such right.

That is, a performer who owns <u>no</u> interest in a sound recording and has conveyed all of his rights to exploit the recording to another cannot use the statue to control the exploitation of the sound recording by the copyright owner. Where ownership and control of a copyrighted sound recording has not been conveyed, there is no conflict between the rights protected by the New York statute and the purposes served by the copyright law and preemption is not appropriate. See <u>Brown v. Ames</u>, 201 F.3d 654, 659-61 (5th Cir. 2000).

Since Mr. Wilson conveyed no rights to use a recording of his voice, under copyright or otherwise to any of the defendants and has never granted any of them the right to exploit a recording of his voice, <u>Laws</u>, <u>Butler</u> and <u>Fleet</u> are inapposite and the claim under New York Civil Rights Law § 51 is not preempted.

## CONCLUSION

For all the foregoing reasons, the motion to dismiss should be denied in all respects.

Dated:   New York, New York    Yours, etc.
         November 16, 2007

                               DORSEY & WHITNEY LLP
                               Attorneys for Plaintiff

                               By: /s/ Helene M. Freeman
                                   Helene M. Freeman
                               250 Park Avenue
                               New York, NY 10177
                               (212) 415-9200