UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------x

CHARLES WILSON,

Plaintiff,

v.

CAPITOL RECORDS, INC. and EMI MUSIC, INC. d/b/a CAPITOL MUSIC GROUP, BERLIN CAMERON UNITED, HEINEKEN USA, INC.,

Defendants.

---------------------------------------------------------------------x

07 CV 5449 (DC)

Electronically Filed

**REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S RIGHT OF PUBLICITY CLAIM**

**Table of Contents**

I Once A Performance Is Fixed In A Tangible Medium – As Here Where Plaintiff's Vocal Performance Is Fixed In A Sound Recording – State-Law Right Of Publicity Claims Fall Within The Subject Matter Of Copyright.......................... 1

II Plaintiff Cannot Distinguish His Vocal Performance, Which Is Fixed In The Sound Recording *Beautiful*, From The Laws Line Of Cases In Which Courts Routinely Find Preempted State-Law Claims Based On Such Fixed Performances. .......................................................................................................... 3

III Because Plaintiff Seeks To Vindicate The Same Rights Under Both State And Federal Law, His State-Law Claim Is "Equivalent" To His Copyright Claim. .................................................................................................................. 6

**REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S RIGHT OF PUBLICITY CLAIM**

Plaintiff's state-law right of publicity claim satisfies both elements of the preemption analysis. *First*, since his vocal performance is fixed in a sound recording, his claim falls within the subject matter of copyright. Laws v. Sony Music Entm't, Inc., 448 F.3d 1134, 1139-43 (9th Cir. 2006) ("[O]nce a voice becomes part of a sound recording in a fixed tangible medium it comes within the subject matter of copyright law"); 17 U.S.C. § 102(a)(7) ("Copyright protection subsists . . . in original works of authorship fixed in any tangible medium of expression. . . . Works of authorship include . . . sound recordings."). *Second*, Plaintiff's right of publicity claim is "equivalent" to the Copyright Act's exclusive reproduction and distribution rights and, thus, Plaintiff's claim comes within the "general scope" of the Copyright Act. Fleet v. CBS, Inc., 50 Cal. App. 4th 1911, 1924 (Cal. Ct. App. 1996) ("[A] right is equivalent to rights within the exclusive province of copyright when it is infringed by the mere act of reproducing, distributing, or displaying the work at issue."). Plaintiff's arguments to the contrary are unavailing.

**I Once A Performance Is Fixed In A Tangible Medium – As Here Where Plaintiff's Vocal Performance Is Fixed In A Sound Recording – State-Law Right Of Publicity Claims Fall Within The Subject Matter Of Copyright.**

Plaintiff spends much of his Opposition extolling the virtues of right of publicity statutes. See Opposition at 5-8, 11-12. Plaintiff contends that since right of publicity claims normally are not preempted, then *ipso facto* Plaintiff's state-law claim survives preemption. See Opposition at 8 (contending that "[t]he ability of a performer such as plaintiff to maintain claims under Civil Rights Law § 51 is routinely upheld in this district regardless of the medium in which their voice or likeness is embodied."). Plaintiff's reliance on the intrinsic value of state publicity statutes

and his tautological argument – that since such claims are not always preempted, his should not be preempted – are red herrings.

The only relevant consideration is that once a performance is fixed in a tangible medium – for example, a sound recording or a motion picture – that performance falls within the subject matter of copyright. Briarpatch Ltd. v. Phoenix Pictures, Inc., 373 F.3d 296, 305 (2d Cir. 2004) ("The subject matter requirement is satisfied if the claim applies to a work of authorship fixed in a tangible medium of expression and falling within the ambit of one of the categories of copyrightable works."). Here, Plaintiff contributed a vocal performance that was fixed in the sound recording *Beautiful*. See First Amended Complaint ("FAC") ¶ 26 ("Defendants . . . have used the ***sound recording*** of plaintiff's vocal performance of 'Beautiful' without Plaintiff's consent in a commercial.") (emphasis added). As such, Plaintiff's right of publicity claim falls within the subject matter of copyright. Laws, 448 F.3d at 1139-43 ("[O]nce a voice becomes part of a sound recording in a fixed tangible medium it comes within the subject matter of copyright law"); Daboub v. Gibbons, 42 F.3d 285, 289 n.6 (5th Cir. 1995) (sound recordings fall within subject matter of copyright); Stanford v. Ceasars Entm't, Inc., 430 F. Supp. 2d 749, 757 (W.D. Tenn. 2006) (once plaintiff voluntarily committed his performance to a tangible medium, "performance became a 'dramatic work' that was 'fixed in a tangible medium of expression'" and "falls within the scope of copyright law"); Butler v. Target Corp., 323 F. Supp. 2d 1052, 1056–57 (C.D. Cal. 2004) (right of publicity claim, based on use of plaintiff's sound recordings in defendant's commercials, preempted by the copyright act); Fleet, 50 Cal. App. 4th at 1918-19 (two actors' rights of publicity in their performances in a motion picture were preempted because "once [plaintiffs'] performances were put on film . . . the performances came within the scope or subject matter of copyright law protection").

## II Plaintiff Cannot Distinguish His Vocal Performance, Which Is Fixed In The Sound Recording *Beautiful*, From The Laws Line Of Cases In Which Courts Routinely Find Preempted State-Law Claims Based On Such Fixed Performances.

Plaintiff unsuccessfully attempts to distinguish his fixed vocal performance from the myriad other such performances that courts have found preempted.

Plaintiff invokes the line of cases holding that right of publicity claims concerning an individual's "persona" are not preempted because a persona cannot be authored and is not "fixed." Opposition at 6-7. Fatal to Plaintiff's argument is that no case has found that a ***fixed vocal performance*** is also an expression of the individual's persona. Indeed, courts directly reject Plaintiff's attempt to conflate "voice fixed in a sound recording" with "voice as persona." See Laws, 448 F.3d at 1141 ("Although California law recognizes an assertable interest in the publicity associated with one's voice, . . . it is clear that federal copyright law preempts a claim alleging misappropriation of one's voice when the ***entirety of the misappropriated vocal performance is contained within a copyrighted medium***.") (emphasis added).

The distinction between "voice fixed in a sound recording" and "voice as persona" is demonstrated by one of the cases relied on by Plaintiff. In Brown v. Ames, 201 F.3d 654, 656 (5th Cir. 2000), a collection of individual musicians brought suit against a music producer and a record label. The musicians asserted *inter alia* a claim that the defendants violated the musicians' right of publicity by exploiting the musicians' "names, photographs, likenesses and biographical material" as used on albums featuring the musicians' master recordings. Id. The court concluded that the Copyright Act did not preempt the musicians' claims to a right of publicity in their names and likenesses. Id. at 658. However, the court explicitly noted that this case was different from Daboub, 42 F.3d 285, and Fleet, 50 Cal. App. 4th 1911 (i.e., those cases where the plaintiff seeks to protect a performance embodied in a sound recording):

> The crucial difference . . . is that in Daboub the basis of the misappropriation claim, as well as the copyright infringement claim, was the song itself, bringing it within section 301's [17 U.S.C. § 301] ambit, whereas here the basis of the misappropriation claim was defendants' use of plaintiffs' names and/or likenesses. . . .
>
> Fleet, like Daboub, involved a claim of misappropriation of something – in Fleet, dramatic performances; in Daboub, songs – within the subject matter of copyright. This case, in contrast, involves a claim of misappropriation of name and/or likeness, which is not within the subject matter of copyright.

Brown, 201 F.3d at 658.

The Brown court went on to distinguish the voice impersonation case of Midler v. Ford Motor Co., 849 F.2d 460 (9th Cir. 1988) – relied on by Plaintiff, see Opposition at 7-8 – from the fixed sound recording cases of Daboub, Fleet, and Laws. This distinction is dispositive here. In Midler, the plaintiff did not base her right of publicity claim on a vocal performance fixed in a sound recording. 849 F.3d at 462. Midler dealt only with a vocal style, which cannot be "fixed." Brown, 201 F.3d at 659. Midler made clear its limited holding: "We hold only that when a distinctive voice of a professional singer . . . is deliberately ***imitated*** in order to sell a product, the sellers have appropriated what is not theirs." 849 F.3d at 463 (emphasis added). Here, Plaintiff does not allege, nor can he, that Defendants imitated his vocal style. Plaintiff alleges only that Defendants used his actual vocal performance as fixed in a sound recoding. See FAC ¶ 26 ("Defendants . . . have used the ***sound recording*** of plaintiff's vocal performance of 'Beautiful' without Plaintiff's consent in a commercial.") (emphasis added); see also id. ¶¶ 17, 27.

Plaintiff attempts to distinguish the on-point Laws decision by relying on Facenda v. NFL Films, Inc., 488 F. Supp. 2d 491 (E.D. Pa. 2007). Facenda, however, is unhelpful to Plaintiff.

*First*, Facenda actually supports finding Plaintiff's right of publicity claim preempted. Facenda, relying on Laws, concluded that preemption does not lie where the putative plaintiff sues the copyright holder, rather than the licensee. 488 F. Supp. 2d at 502. Here, however (and

as in Laws), Plaintiff's state-law claim is against the licensee, not the copyright holder. This distinction is critical because, as explained in Laws, there is a strong public policy against permitting suit against licensees of copyright holders. Laws, 448 F.3d at 1145 ("It is hard to imagine how a copyright would remain meaningful if its licensees were potentially subject to suit from any performer anytime the copyrighted material was used.").

*Second*, even assuming Facenda supported Plaintiff's attempt to avoid preemption, which it does not, Facenda grossly misinterpreted Laws. Facenda read Laws to hold that a state-law claim falls within the subject matter of the Copyright Act where the plaintiff "sued the holder of the copyright" alleging that the copyright holder transgressed agreed limits over the scope of its license to use the copyright. Facenda, 488 F. Supp. 2d at 501-02 & n.3. Facenda's reliance on Laws for this conclusion is wrong. Not only did Laws make clear that it "express[ed] no views on the correctness of" this issue (i.e., whether the suit was brought against the copyright holder instead of the licensee), Laws, 448 F.3d at 1142 n.4, but no reasoning supports any such distinction. See 5 William F. Patry, Patry On Copyright §18:43 at 18-155 (2007) ("Ownership of copyright is relevant only to a copyright infringement action.").[1]

Finally, the remaining cases relied on by Plaintiff only hold that individuals have the right to control the exploitation of their image or likeness, which cannot be permanently fixed. See Toney v. L'Oreal USA, Inc., 406 F.3d 905, 910 (7th Cir. 2005) ("There is no 'work of authorship' at issue in Toney's right of publicity claim. A person's likeness – her persona – is not authored and is not fixed."); Shamsky v. Garan, Inc., 632 N.Y.S.2d 930, 934-35 (N.Y. App.

---

[1] In addition, Facenda is of limited precedential value considering the district court certified for interlocutory appeal the preemption portion of its analysis. Facenda v. NFL Films, Inc., No. 06-3128, 2007 WL 1575409, *1 (E.D. Pa. May 24, 2007); see 28 U.S.C. § 1292(b) (grounds for interlocutory appeal exist where "a district judge . . . shall be of the opinion that such order involves a controlling question of law as to which there is ***substantial ground for difference of opinion*** and that an immediate appeal from the order may materially advance the ultimate termination of the litigation") (emphasis added).

Div. 1995) ("Finally, and most fundamentally, the [baseball] players are not seeking to assert a right 'in the picture'; they are seeking to assert a right to the commercial exploitation of their identity . . . . [A] right of publicity 'in a particular performance' is distinguishable from a right to commercial exploitation of one's own identity."), quoting Baltimore Orioles v. MLBPA, 805 F.2d 663, 676 n.24 (7th Cir. 1986); KNB Enters. v. Matthews, 78 Cal. App. 4th 362, 365 (Cal. Ct. App. 2000) ("human likeness is not copyrightable"). Plaintiff does not assert any violation of his right of publicity in his image or likeness. (An additional distinction between Plaintiff's claims and these image/likeness cases is that these cases dealt with the ***unauthorized*** distribution of an individual's likeness. See Toney, 406 F.3d at 910; Shamsky, 632 N.Y.S.2d at 931-32; KNB Enters., 78 Cal. App. 4th at 372-73. In each of these cases the copyright holder did not authorize the distribution of the likeness. Here, it is undisputed that the copyright holder, Capitol Records, Inc. and EMI Music, Inc., granted a license to Defendants (i.e., authorized Defendants) to use the sound recording *Beautiful* in advertisements.[2])

**III Because Plaintiff Seeks To Vindicate The Same Rights Under Both State And Federal Law, His State-Law Claim Is "Equivalent" To His Copyright Claim.**

Plaintiff's "lack of equivalency" argument relies entirely on the fact that his claim is styled as a right of publicity cause of action. That is, Plaintiff does not attempt to engage in an analysis of the facts underlying his particular cause of action, instead relying only on right of publicity cases in general. E.g., Opposition at 8 - ("The ability of a performer such as plaintiff to maintain claims under Civil Rights Law § 51 is routinely upheld in this district regardless of the medium in which their voice or likeness is embodied."). However, the "label" Plaintiff affixes to

[2] To the extent Plaintiff would argue that he is, in fact, the true owner of the copyright in his vocal performance, as distinct from the sound recording, such an argument would demonstrate that this case is about ownership of a copyrighted work (a federal claim under the Copyright Act), not a state-law right of publicity claim. That is, Plaintiff can only argue that the license was unauthorized by implicating the protections of the Copyright Act. This is impermissible. See Fleet, 50 Cal. App. 4th at 1923 ("[A] party who does not hold the copyright in a performance captured on film cannot prevent the one who does from exploiting it by resorting to state law.").

his claim is irrelevant. See Patricia Kennedy & Co., Inc. v. Zam-Cul Enters., Inc., 830 F. Supp. 53, 56 (D. Mass. 1993) ("[C]ourts focus not upon the label affixed to the state cause of action, but rather upon 'what plaintiff seeks to protect, the theories in which the matter is thought to be protected and the rights sought to be enforced.'"), quoting Computer Assocs. Int'l, Inc. v. Altai, Inc., 982 F.2d 693, 716 (2d Cir. 1992).

The critical aspect of the equivalency analysis is whether the state law-right to be vindicated is the same as the right protected by federal copyright law. See Harper & Row, Publishers, Inc. v. Nation Enters., 723 F.2d 195, 199-201 (2d Cir. 1983), rev'd on other grounds, 471 U.S. 539 (1985). In making the equivalency determination, courts look to "what the plaintiff seeks to protect, the theories in which the matter is thought to be protected and the rights sought to be enforced." Am. Movie Classics Co. v. Turner Entm't Co., 922 F. Supp. 926, 931 (S.D.N.Y. 1996) (quotations omitted). Under this analysis, it is clear that Plaintiff's state-law claim is equivalent to his copyright claim.

Plaintiff asserts nearly identical claims against Defendants, one sounding in federal copyright law and one sounding in state tort law. Compare Complaint ¶ 26 (copyright infringement cause of action: "Defendants Berlin Cameron United and Heineken USA, Inc. have used the sound recording of plaintiff's vocal performance of 'Beautiful' without plaintiff's consent in a commercial for Heineken Premium Light beer [sic]."), with Complaint ¶ 32 (right of publicity cause of action: "The use by Berlin Cameron United and Heineken USA, Inc. of plaintiff's vocal performance in commercial advertisements for Heineken Premium Light Beer … violates New York['s right of publicity statute.]"). Both Plaintiff's state-law claim and copyright claim concern only the (allegedly) unauthorized reproduction and distribution – which are "exclusive" rights enumerated in the Copyright Act, 17 U.S.C. § 106 – of Plaintiff's vocal

performance as fixed in the sound recording *Beautiful*. That Plaintiff's state and federal claims are based on identical predicate acts mandates preemption. See Briarpatch Ltd., 373 F.3d at 305 ("The general scope requirement is satisfied only when the state-created right may be abridged by an act that would, by itself, infringe one of the exclusive rights provided by federal copyright law. In other words, the state law claim must involve acts of reproduction, adaptation, performance, distribution or display."); accord Fleet, 50 Cal. App. 4th at 1920 ("Appellants may choose to call their claims misappropriation of right to publicity, but if all they are seeking is to prevent a party from exhibiting a copyrighted work they are making a claim 'equivalent to an exclusive right within the scope of copyright.'"); Benjamin Capital Investors v. Cossey, 126 Or. App. 135, 141 (Or. App. 1994) ("When identical predicate acts supply the basis for both a state law claim and a copyright claim, the state law claim is preempted.").

Plaintiff contends that regardless of how similar his state-law claim is to his copyright claim, the state right of publicity statute contains a "use in commercial advertising" element, which is an "extra element" that negates preemption. Plaintiff's argument necessarily means that New York's right of publicity statute could ***never*** be preempted. Considering this Circuit "take[s] a restrictive view of what extra elements transform an otherwise equivalent claim into one that is qualitatively different from a copyright infringement claim," Briarpatch Ltd., 373 F.3d at 306, the Court should reject Plaintiff's attempt to greatly expand state control over the realm of copyright.

In addition, the cases relied on by Plaintiff to argue that the right of publicity statue is immune from preemption lack any reasoned analysis of the issue. Plaintiff's state cases rotely conclude that since "use in advertising" is a ***different*** element, preemption does not apply. E.g., Molina v. Phoenix Sound Inc., 747 N.Y.S.2d 227, 231 (N.Y. App. Div. 2002) ("Because the state

statute contains the additional element of use of one's image for advertising or trade purposes without written consent, we find the nature of the action is nonequivalent and the doctrine of preemption does not apply."). However, "these courts take the 'extra element' test too literally and ignore the principle that the state law claim at issue must be 'qualitatively different' in order to avoid preemption." Faulkner v. Nat'l Geographic Soc'y, 211 F. Supp. 2d 450, 477 (S.D.N.Y. 2002). And, the federal decision cited by Plaintiff, Factors Etc., Inc. v. Pro Arts, Inc., 496 F. Supp. 1090, 1100 (S.D.N.Y. 1980), is no longer persuasive precedent. Factors refused to find equivalency (and therefore no preemption) due to the "extra element" of celebrity status; however, whether a plaintiff is a celebrity is no longer an element of the statute. See 1 M. & D. Nimmer, Nimmer On Copyright § 1.01[B][1][c] at 1-30 ("Though perhaps valid on the law under which it was decided, that rationale has no application to the prevailing construction that the right of publicity extends to all individuals, regardless of 'celebrity' status.") (internal footnotes omitted).

The better view is that while the additional element of "use in advertising" alters the scope of protection, it does not alter the nature of Plaintiff's claim. Because Defendants' reproduction and distribution of the sound recording *Beautiful* serve as the foundation of Plaintiff's state law claim, it is preempted. See Laws, 438 F.3d at 1144 ("The mere presence of an additional element ('commercial use') in section 3344 is not enough to qualitatively distinguish [plaintiff's] right of publicity claim from a claim in copyright. . . . Although the elements of [plaintiff's] state-law claims may not be identical to the elements in a copyright action, the underlying nature of [plaintiff's] state law claims is part and parcel of a copyright claim.") (internal citations omitted); Motown Record Corp. v. George A. Hormel & Co., 657 F. Supp. 1236, 1240 (C.D. Cal. 1987) ("The fact that [the right of publicity statute] requires that the

unauthorized use must be in connection with the advertising of a product, unlike copyright, is not a qualitative extra element which changes the nature of the action.").

**Conclusion**

For the foregoing reasons, Defendants respectfully request that the Court dismiss Plaintiff's third claim – for violation of his state-law right of publicity – for failure to state a claim upon which relief can be granted.

Dated: New York, New York
November 30, 2007

Respectfully submitted,

COWAN, LIEBOWITZ & LATMAN, P.C.
RICHARD S. MANDEL (RM-4884)

MITCHELL SILBERBERG & KNUPP LLP
RUSSELL J. FRACKMAN
DAVID A. STEINBERG (Admitted Pro Hac Vice)
WADE B. GENTZ
Attorneys for Defendants

By: [signature]
David A. Steinberg
11377 West Olympic Boulevard
Los Angeles, California 90064
(310) 312-2000